**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| Anthony James Moore, | ) | |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| vs. | ) | |
| | ) | Case No. A1-05-098 |
| Leann K. Bertsch, Director of Corrections, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Anthony Moore filed this *pro se* civil rights suit under 42 U.S.C. § 1983 on September 22, 2005, and was granted leave to proceed *in forma pauperis* under 28 U.S.C. § 1915(b). Before the court had completed its initial review as mandated by 28 U.S.C. §1915A, plaintiff filed a motion to amend his complaint on October 25, 2005, which was granted on November 9, 2005. In the amended complaint, Moore reasserts his original claims and adds three new ones. The following is the undersigned's report and recommendation with respect to the review of plaintiff's amended complaint pursuant to 28 U.S.C. § 1915A.

I.    **BACKGROUND**

Plaintiff is a prisoner at the North Dakota State Penitentiary ("NDSP") in Bismarck, North Dakota. He is no stranger to this court. In 2004, he brought a §1983 lawsuit that was dismissed with prejudice in February 2005 and that is now on appeal to the Eighth Circuit. Case No. A4-01-038 ["2004 Action"]. Because the present action relates in part to the 2004 Action, some background regarding the 2004 Action is necessary.

In his 2004 Action, Moore sued prison officials and several contract physicians alleging deliberate indifference to what he claimed were two serious medical conditions. Moore described the first condition as a "serious infection [that] exists in my body" causing "pain on both left and right sides, pain in stomach, intestines and, nauseated, horrible smelling gas, tiredness" and extreme pain in both testicles. The record before the court indicated that plaintiff's abdominal complaints dated back to 2002 and that Moore had undergone numerous examinations, tests, and studies, the results of which were negative with respect to any serious medical condition. At one point, Moore was referred for a psychological evaluation because of a concern he was delusional as to his belief that his body had been invaded by parasites and that this was the cause of his abdominal and testicular problems. See Order Granting Defendants' Motions for Summary Judgment, Denying Plaintiff's Motion for Summary Judgment, and Denying Plaintiff's Motion for Injunctive Relief, Case No. A4-01-038 (February 2, 2005).

Upon motion for summary judgment, the court dismissed Moore's Eighth Amendment claim with respect to his first claimed serious medical condition on two grounds. The court concluded that there was no evidence that Moore was suffering a serious medical condition stating the following:

> The record clearly reveals that Moore has been subjected to a multitude of physical examinations, diagnostic tests, and numerous studies designed to determine the etiology of his subjective complaints or concerns regarding his abdominal, gastric and testicular complaints, and his assertion that he suffers from parasites. The undisputed evidence in the record establishes that every physician who has examined and evaluated Moore to date has concluded that he has exhibited no signs or symptoms of parasites. The medical evidence simply does not support Moore's self-diagnosis.

Id. The court also concluded that the defendants had not been deliberately indifferent to Moore's testicular and abdominal complaints. The court stated:

There is no evidence in the record before the Court to show that the Defendants ignored Moore's persistent complaints or concerns. Rather, the evidence establishes that the Defendants promptly responded to the endless stream of complaints and appeals filed by Moore. There is no evidence in the record to show that the Defendants were deliberately indifferent to Moore's medical needs, or that the Defendants were negligent or in any manner mishandled Moore's case. The mere fact that an inmate disagrees with the course of treatment does not, in and of itself, suffice to establish a violation of the Eighth Amendment.

The United States Supreme Court has defined deliberate indifference as something more than negligence. There is simply no evidence in the record before the Court to support a claim of negligence much less any evidence reflecting a deliberate indifference to Moore's medical needs. See Farmer v. Brennan, 511 U.S. 825, 835 (1994). To the contrary, the record before the Court clearly shows that the Defendants were attentive and thorough in the care and treatment rendered.

Id.

The second serious medical condition that Moore alleged in his 2004 Action related to an injury to one of his fingers that had been surgically repaired at state expense, but which Moore had re-injured. When Moore demanded a second surgery, prison officials indicated they would permit the surgery, but would not pay for it because Moore had deliberately caused the re-injury and because the repair was not medically necessary. The court dismissed this claim, as well, stating:

Moore has failed to establish the existence of an objectively serious medical need or that there existed a substantial risk of serious harm to him under the circumstances. The record establishes that any further surgical repair of Moore's finger is not considered medically necessary. Even if the Court were to conclude that Moore's finger injury was an objectively serious medical need, Moore has failed to present any evidence which reflects a subjective state of mind evincing deliberate indifference on the part of the Defendants.

The record reveals that after the NDSP refused to provide Moore with a second repair surgery, the prison staff continued to offer Moore physical therapy to improve the functioning of his finger. However, Moore refused to participate in physical therapy. Moore also contends that Dr. Becker is still willing to perform a corrective surgery on his finger. While the record in unclear as to whether Dr. Becker would still consider performing surgery on Moore, it is clear that the medical staff at the NDSP have determined that additional surgery is not medically necessary and that the NDSP will not provide funds for any additional surgery. The record further

establishes that the NDSP is willing to allow Moore to pursue corrective surgery with his own funds. Thus, Moore has not established that the Defendants were substantially aware of, but disregarded an excessive risk to inmate health or safety. Moore's claim of an Eighth Amendment violation as it relates to his finger injury fails as a matter of law. The Court finds that the undisputed evidence demonstrates that Moore has failed to meet his burden of establishing a prima facie violation of the Eighth Amendment.

Id.

In addition to his claims of deliberate indifference, Moore also sued prison officials in his 2004 Action for what he alleged were unlawful interferences with his prison mail.  Moore claimed that prisons officials had on several occasions opened mail, classified by prison regulations as "privileged," outside of his presence contrary to prison regulations and in violation of his constitutional rights.  Upon summary judgment, this court concluded that not all mail classified by NDSP prison regulations as "privileged" is protected under the Constitution from being opened outside a prisoner's presence; rather, the constitutional requirement that the prisoner be present when mail is opened applies only to  "legal" mail.  Of the mail that Moore complained about in the 2004 Action, the court concluded that three of the pieces (although "privileged" under NDSP regulations) were not legal mail; hence, Moore had no actionable claim for a constitutional violation under § 1983 as to these pieces.  With respect to the fourth piece, the court concluded that, even if it was "legal mail," its opening outside of Moore's presence was an isolated event and not actionable because of a lack of proof of an improper motive.  Id.

In the action now before the court for 1915A screening, Moore makes a number of discrete claims in the statement of claim section of his amended complaint, some of which relate to the 2004 Action.  These claims will be addressed seriatim.

## II.   DISCUSSION

### A.   Standard Governing Initial Review

When a prisoner seeks to sue a governmental entity, officer, or employee, the court is required under 28 U.S.C. § 1915A to conduct a preliminary screening of plaintiff's complaint to identify any cognizable claims and to dismiss the complaint, or any part of it, that is frivolous, malicious, fails to state a claim, or seeks monetary relief from an immune defendant.  In addition, the court also has the power at any time under § 1915(e)(2) to dismiss an *in forma pauperis* proceeding at any time the court determines the proceeding is frivolous or malicious, fails to state a claim upon which relief should be granted, or seeks monetary relief against an immune defendant.

In conducting its § 1915A review, the court must keep in mind the admonition of the Eighth Circuit that *pro se* prisoner complaints are to be liberally construed and that the court is obligated to determine whether the complaint provides relief "on any possible theory." Haley v. Dormire, 845 F.2d 1488, 1490 (8th Cir. 1988).  The court may not dismiss the complaint unless it "appears beyond doubt that plaintiff can prove no set of facts that would demonstrate an entitlement to relief." Gordon v. Hansen, 168 F.3d 1109, 1113 (8th Cir. 1999).

In this case, plaintiff alleges claims under 42 U.S.C. § 1983.  To state a claim pursuant to 42 U.S.C.§ 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988).

### B.   Eighth Amendment Deliberate Indifference Claims  (Paragraphs 1 & 7)

In paragraphs 1 and 7 of his amended complaint, Moore seeks to sue a number of named and unnamed doctors and medical-care provider employees in Fargo and Bismarck and a number of

named and unnamed  Cass County jail and NDSP officials and employees, with respect to Eighth Amendment claims of deliberate indifference that appear to relate to the same medical condition that was the subject of the 2004 Action dismissed earlier this year.  A review of Moore's pleadings (including attachments) reveals the following:

- In July 2005, Moore (a long-term prisoner at the NDSP in Bismarck) was in the temporary custody of Cass County jail officials in Fargo, North Dakota.  While at the Cass County jail, he complained to jail officials that he was suffering from severe pain.  According to Moore, they refused to take any action until he filed a grievance at which time he was taken to MeritCare Hospital in Fargo where he was seen by Dr. Lystad, one of the named defendants.

- Moore advised Dr. Lystad that he was suffering from "pain in testicles, chronic intestinal pain[,] persistent fatigue, constant bloating, horrible smelling gas, diarhhea everytime that I eat I gets sick." [sic]   These are the same conditions that the court concluded in the 2004 Action, just four months prior to Dr. Lystad's examination, did not constitute a serious medical condition and for which Moore had undergone extensive evaluation and testing.

- Moore claims he protested when Dr. Lystad was given his NDSP medical records relating to the same complaints, arguing he had not authorized their release, that the records were false and erroneous, and that the records would prejudice Dr. Lystad's medical judgment.

- Moore acknowledges that tests were performed at MeritCare and attaches copies of two lab reports that indicate he has an elevated level for "amalyse" and "small

phleboliths" in the lower pelvis.  Moore claims these two anomalies are additional evidence of a serious medical condition.

- Moore claims Dr. Lystad laughed at his complaints and told him there was nothing wrong.  He claims that Dr. Lystad refused to treat him for his pain and suffering, except to prescribe some medication that Moore claims was ineffectual.

- Moore then returned to the NDSP.  Upon his return, Moore states that NDSP officials, including Dr. Hagan (a defendant in this action, as well as the 2004 Action), refused to treat him for what he describes as "excruciating pain in pelvis area and in upper right chest area" and elevated amylase and small phleboliths in the pelvis area as indicated by the MeritCare testing.  Moore filed a grievance because of this claimed failure to treat.  In a written response to the grievance (a copy of which is attached to Moore's pleadings), prison officials state that Dr. Hagan evaluated Moore and advised (1) that the MeritCare testing indicated Moore's pancreas and liver enzymes were all normal, except for the elevated reading for amylase, which Dr. Hagan advised was not related to his pain complaints, and (2) that the small phleboliths are a normal part of aging and also do not relate to any pain syndrome.  The response also states that Dr. Hagan offered Moore the opportunity to repeat the test for amylase (which was Dr. Lystad recommended)  along with a liver panel, an EKG, and CT scan of the abdomen and pelvis and that Moore refused all of these, except for the CT scan which is reported as having been scheduled.

By all appearances, Moore's deliberate indifference claims are frivolous, malicious, and barred by the court's prior judgment in the 2004 Action.  While there is the remote possibly that the

NDSP's response to Moore's grievance does not accurately reflect what the medical professionals have concluded since the court's last order,  this should not be a license for Moore now to sue virtually every medical-care provider and jail and prison official he has come in contact with (both in Fargo and Bismarck) since the court's order of February 2, 2005, for the same conditions this court concluded, just months ago, were neither serious nor actionable.  To allow Moore to proceed in such shot-gun fashion based only upon his unsupported, self-diagnosis that his condition has worsened and moved into new areas would defeat the intent of Congress in enacting the § 1915A the screening requirements and would make a mockery of the court's prior judgment.

Given the unique circumstances of this case (including the recency of the court's prior judgment dismissing identical complaints, all indications pointing to Moore's claims as being frivolous and malicious, and Moore's prior record of making unfounded complaints in this court), it is recommended that Moore's deliberate indifference claims be allowed to go forward in a second amended complaint (because of failure to exhaust problems with another claim), but (1) only on a limited basis to determine whether anything has materially changed that would avoid the bar of the court's prior decision and (2) only as to NDSP warden Timothy Schuetzle and Dr. John Hagan, who currently have responsibility for Moore's medical treatment.  By proceeding in this fashion, the court can confirm relatively quickly what, at this point, appears to be obvious from Moore's own pleadings and attachments that Moore's condition has not materially changed and that the medical-care professionals have not been indifferent to his complaints and avoid the harassment of a great number of persons and an enormous waste of time and expense on their part.  Moreover, Moore would suffer no prejudice.  If the court determines Moore has no claim with respect to these two defendants (who currently have responsibility for his care), then it is obvious he has no claim against

the numerous other defendants, both named and unnamed, since the alleged medical condition that

is the basis of the claims is the same.  In the remote chance that conditions have materially changed,

the court could later allow an amended complaint (or new action) to include, as appropriate, the

Fargo doctors, MeritCare officials, Cass County jail officials and other NDSP personnel, with

respect to whom there is no pending statute of limitations issue.

### C.      Claims re Interference with Mail  (Paragraph 2)

Moore claims in paragraph 2 of the statement of claim that NDSP officials have opened

additional "privileged mail" outside of his presence.  Given the court's prior ruling in the 2004

Action with regard to similar mail complaints, Moore is well aware of the distinction drawn by the

court  between mail that is merely "privileged" under NDSP regulations and "legal" mail and the

fact the court considers only the opening of the latter in Moore's absence to be  actionable under

§1983.  Based on Moore's failure to plead that the mail allegedly opened outside his presence was

legal mail, it is recommended that these claims be dismissed without prejudice for failure to state

a claim.

### D.      Claims Related to the Denial of Good-time Credit (Paragraphs 3 & 4)

In paragraphs 3 and 4 of the statement of claim in the amended complaint, Moore complains

about his loss of good-time credit resulting from several different disciplinary proceedings.  In

paragraph three, Moore claims he lost one month and ten days of good-time credit time because of

an illegal retaliation by the prison officials for an allegation he made against one of the prison

employees.  Moore asserts, in paragraph four, that prison officials have found him guilty on three

occasions with "no evidence to support there [sic] conclusions[,] which violates due process."  The

three incidents referred to by Moore include loss of one month and 15 days of good time for self-

mutilation, self-destruction, failure to comply with recommended medical treatment, or tattooing; one month and five days for false testimony presented to staff; and three months and 30 days for tampering with a locking device, theft of property, disorderly conduct, and attendance in an unauthorized area.

The United States Supreme Court has made clear that a § 1983 action cannot be used to challenge, directly or indirectly, the length or validity of a prisoner's confinement, including deprivations of good-time credit, and that this can only be done using habeas corpus remedies. Edwards v. Balisok, 520 U.S. 641 (1997); Preiser v. Rodriguez, 411 U.S. 475 (1973); see Wilkson v. Dotson, __ U.S. __ 125 S.Ct. 1242 (2005); Heck v. Humphery, 512 U.S. 477 (1994); Wolff v. McDonnell, 418 U.S. 539 (1974).  In summarizing this line of cases (*i.e.*, Preiser, Wolff, Heck, and Balisok), the Supreme Court stated the following in Dotson:

> These cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation)-no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)- if success in that action would necessarily demonstrate the invalidity of confinement or its duration.

125 S.Ct. at 1248.

In Moore's prayer for relief, he requests that "the disciplinary actions be expunged from [the] record," which, necessarily would have the effect of restoring (or setting up basis for restoration) of his lost good-time.  Consequently, under the foregoing authority, Moore's claims in paragraphs three and four must be dismissed for failure to state a claim.  See also Portley-el v. Brill, 288 F.3d 1063 (8th Cir. 2002) (§ 1983 action seeking money damages and expungement of the disciplinary action resulting in a denial of good-time credits was barred under Heck and properly dismissed by the district court when conducting its § 1915A screening).  Further, even if Moore dropped his

demand for expungement of the disciplinary action, his request for monetary damages is predicated on illegal action and denial of due process that implicates the validity of the disciplinary action. Consequently, it would appear that these claims would be barred even if Moore limited his claim for relief only to a request for damages.

###    E.    Claim of Conspiracy to Make a Civil Commitment (Paragraph 5)

Moore claims in paragraph 5 of his statement of claim that there was a conspiracy by several prison officials to involuntarily commit him to the Special Assistance Unit in Jamestown, North Dakota, which is a psychiatric unit.

"To prove a § 1983 conspiracy claim against a particular defendant, the plaintiff must show: that the defendant conspired with others to deprive him or her of a constitutional right; that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and that the overt act injured the plaintiff."   Askew v. Millerd, 191 F.3d 953, 957 (8th Cir. 1999).  The actionable wrongs in any claim for civil conspiracy are the acts causing damage to the plaintiff, not the conspiracy itself, and the existence of damages is an essential element of the claim.  E.g., Beck v. Prupis, 529 U.S. 494, 504 (2000); Simpson v. Weeks, 570 F.2d 240, 242-243(8th Cir. 1978).

The amended complaint and the documents attached to it indicate that the following occurred:  Warden Schuetzle sent an email to the Director of Medical Services, Kathleen Bachmeier, indicating he had initiated procedures to commit Moore to the Special Assistance Unit in Jamestown.  However, as part of the initiated procedures,  Dr. Cheryl Huber evaluated Moore and determined that he was not dangerous and, absent any emergent difficulties, did not meet the criteria for involuntary treatment.   As a result, Moore was never sent to the Special Assistance Unit. Consequently, he suffered no damage, much less any deprivation of a constitutional right.

Therefore, he has no actionable claim for conspiracy, and Moore's claim in paragraph 5 should be dismissed with prejudice.

### F.      Claims re Release of Medical Records (Paragraph 6)

Moore claims in paragraph 6 of his statement of claim that MeritCare Hospital, Cass County Jail, and NDSP officials all violated his federal constitutional and statutory rights, as well as state-law statutory rights, of confidentiality by exchanging his medical records without his permission.

It is clear, however, from Moore's pleadings that the sharing of medical records was to facilitate Moore's evaluation and treatment. In fact, Moore notes in his pleadings that he objected to this being done because of his concern that the exchange of the records would contaminate the medical judgment of those reviewing them.

Generally speaking, prisoners retain constitutional rights that are not inconsistent with their prisoner status, but those rights are subject to prison officials being able to limit the exercise of those rights by regulation or action as necessary to meet the legitimate needs of the penal system. E.g., Murphy v. Missouri Department of Corrections, 372 F.3d 979, 986-987 (8th Cir. 2004); see Wolf v. McDonnell, 418 U.S. 539, 556-563 (1974); Procunier v. Martinez, 416 U.S. 396, 404-407 (1973). In that regard, several courts have held that prisoners have some constitutional rights with respect to non-disclosure of their medical information. See Doe v. Delie, 257 F.3d 309 (3d Cir. 2001) (right of privacy); Powell v. Schriver, 175 F.3d 107 (2d Cir. 1999) (right of privacy and also implicating Eighth Amendment when the release would unnecessarily subject the prisoner to danger).

So far, however, any such constitutional rights appear to be limited. As one court recently observed, the only cases in which such rights have been found to be actionable are those "cases of an unusual medical condition which, if disclosed unnecessarily, would likely expose an inmate to

ridicule, discrimination, or even potentially violence, particularly when the word of the condition is likely to spread through 'rumor or gossip.'" Lee v. Delfavero, 2005 WL 2387820, *3 (N.D.N.Y., Sept. 28, 2005). Such was the case in Delie, which involved the disclosure that the prisoner had AIDS, and in Powell, which involved the disclosure of the fact the prisoner was a transsexual.

Further, and more importantly with respect to Mr. Moore, the cases recognizing the constitutional interests of prisoners in non-disclosure are not absolute and can be impinged upon when necessary to achieve legitimate needs of the penal system. For example, in Delie, the Third Circuit stated the following:

> We acknowledge, however, that a prisoner does not enjoy a right of privacy in his medical information to the same extent as a free citizen. We do not suggest that Doe has a right to conceal this diagnosed medical condition from everyone in the corrections system. Doe's constitutional right is subject to substantial restrictions and limitations in order for correctional officials to achieve legitimate correctional goals and maintain institutional security.

257 F.3d at 317; see also Powell, 175 F.3d at 112-114; Lee v. Delfavero, 2005 WL 2387820, *3 (N.D.N.Y., Sept. 28, 2005) (release of prisoner's medical information relating to inmate's capability of carrying out work assignments to non-medical correction workers is legitimate penological interest and did not violate prisoner's right to privacy); Webb v. Goldstein, 117 F. Supp.2d 289 (E.D.N.Y. 2000) (prison not liable for disclosing inmate's medical information to law enforcement officers for the purpose of an ongoing investigation).

As for this case, it is hard to imagine a more legitimate penological interest in releasing medical information than to assist medical professionals in their evaluation and treatment of a prisoner. In fact, it might very well be negligence in some instances for prison officials not to share medical information in their possession with a treating doctor and vice versa. Also bearing upon the legitimacy of such disclosures are the legislative judgments of the State of North Dakota and

the Congress of the United States in the laws that permit the release of prisoner medical records for

this purpose.  For example, N.D.C.C. § 12-44.1-28, in relevant part, states the following with respect

to jails and regional correctional facilities:

> 1. The medical, psychological, and treatment records of an inmate are confidential and may not be disclosed directly or indirectly to any person, organization, or agency, except as provided in this section. . . . . Notwithstanding any other provision of law relation to privilege or confidentiality, except for the confidentiality requirements of federal drug and alcohol treatment and rehabilitation laws, medical psychological, or treatment records may be inspected by or disclosed to the following persons, organizations, or agencies without prior authorization from the inmate or an order from the court:
> . . . .
> b. A division, department, official, or employee of the department of corrections and rehabilitation.
> c. A federal, state, regional, county, or municipal correctional facility receiving physical custody of an inmate from the original correctional facility receiving physical custody of an inmate from the original correctional facility.
> . . . .
> e. The department of human services, a public hospital or treatment facility, or a licensed private hospital or treatment facility.

See also N.D.C.C. § 12-47-36 (making the same allowances for facilities operated by the

Department of Corrections including the NDSP); 45 C.F.R. § 164.512(k)(5) (promulgated pursuant

to the  Health Insurance Portability and Accountability Act of 1996 (HIPAA), Pub.L. 104-191, 110

Stat. 1936).

Consequently, as a matter of law,  Moore has no claim for violation of a constitutional right

with respect to the sharing of his medical records.

Moore also claims that the sharing of records violates federal and state statutory law.

However, Moore has not referenced a statute, state or federal, that would prohibit the sharing of

records he claims occurred in this case.  In fact, as already noted, federal and state law specifically permit the sharing of records to facilitate prisoner treatment.[1]

Based on the foregoing, Moore's complaints regarding the sharing of medical records should be dismissed with prejudice.  Also, given the obviousness of the legitimate purposes of the disclosure, the claims are frivolous.

### G.    Claim of Retaliation for Making Complaint to Nursing Board (paragraph 8)

Moore claims in paragraph 8 of his statement of claim that NDSP nurse Beth Taghon retaliated against him by filing a Class A incident report charging him with insolence to a staff member and actions or activities hateful toward or demeaning any individual.  Specifically, nurse Taghon filed an incident report against Moore, a copy of which is attached to Moore's pleadings, stating Moore concluded his complaint to the North Dakota Board of Nursing by stating that nurse Taghon is "a wicked, low down, coniving [sic] spiteful wench."

Moore further claims that other NDSP officials, including a member of the Adjustment Committee, have joined in the retaliation by endlessly continuing the hearing with respect to the incident report.  However, according to the incident report, the date of the incident (*i.e.*, the date nurse Taghon received a copy of the complaint Moore sent to the disciplinary board) was October 11, 2005, and the date it was delivered to the Adjustment Committee was October 13, 2005, a mere twelve days prior to Moore filing his amended complaint charging the constitutional violation.  Consequently, it is apparent that this part of Moore's claim is frivolous on its face.

---

[1]  With respect to HIPAA, there is also a substantial issue whether its provisions create a private cause of action.  Most, if not all, of the courts that have addressed the issue to date have ruled that it does not.  Johnson v. Quander, 370 F.Supp.2d 79, 99-100 (D.C. 2005).

The Prison Litigation Reform Act ["PLRA"] requires a prisoner to exhaust administrative remedies before filing suit. Specifically, 42 U.S.C. § 1997e(a) states the following:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

The Supreme Court has made it clear that § 1997e(a) applies broadly to all prisoner litigation raising federal claims. In Porter v. Nussle, 534 U.S. 516 (2002), the Supreme Court rejected the argument that § 1997e(a) only applies to conditions affecting prisoners generally and not to single incidents affecting only particular prisoners, such as claim of use of excessive force. Likewise, in Booth v. Churner, 532 U.S. 731(2001), the Supreme Court held that § 1997e(a) mandates exhausting available administrative remedies even when a prisoner seeks only money damages and that remedy is not available as part of the administrative process. The Supreme Court described Congress's reasoning for applying the exhaustion broadly to all cases as follows:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. *Booth*, 532 U.S., at 737, 121 S.Ct. 1819. In other instances, the internal review might "filter out some frivolous claims." *Ibid*. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy. See *ibid*.; see *also Madigan*, 503 U.S., at 146, 112 S.Ct. 1081.

Porter, 534 U.S. at 524-525.

The penalty for failure to exhaust is dismissal. Johnson v. Jones, 340 F.3d 624 (8th Cir. 2003). Further, the Eighth Circuit has construed the PLRA as requiring exhaustion prior to filing suit; consequently, it is not sufficient if exhaustion is completed after suit is commenced and prior

to the court ordering the dismissal. Id.  Finally, the entire action must be dismissed and not just the unexhausted claims. E.g., Kozohorsky v. Harmon, 332 F.3d 1141, 1143 (8th Cir. 2003).  However, in most cases, the court must permit an amended complaint that excludes the unexhausted claims. Id. at 1144.

Although exhaustion is a condition precedent to being able to commence suit, the Eighth Circuit has held it is not a jurisdictional requirement, but rather is an affirmative defense that can be waived by the defendants.  Nerness v. Johnson, 401 F.3d 874, 876 (8th Cir. 2005).   Hence, a prisoner is not required to plead exhaustion and, usually, the issue of failure to exhaust does not arise until a motion to dismiss has been made.  Id.  However, given the nature of the exhaustion requirement, a court can dismiss for failure to exhaust *sua sponte* when it is clear from the pleadings that exhaustion has not occurred.  Anderson v. XYZ Correctional Health Services Inc., 407 F.3d 674, 681-682 (4th Cir. 2005).

This is one of those cases.  Here, there is no question about the fact that an administrative process with respect to nurse Taghon was underway and had not been completed when Moore filed his amended complaint.  In fact, Moore complains (frivolously) about a hearing not being held as of the time that he filed the amended complaint.  Consequently, Moore's amended complaint should be dismissed for failure to exhaust this claim with Moore being given a opportunity to file a second amended complaint containing only exhausted claims that are not otherwise dismissed by the court.[2]

---

[2]  While it is clear from the amended complaint that Moore's claims in paragraph 8 have not been exhausted, this is confirmed by a motion filed by Moore on December 2, 2005, to compel or for injunctive relief.  In that motion, Moore seeks relief against what he describes as continuing retaliation arising, in part, out of his having filed a complaint against nurse Taghon with the State Nursing Board.  In the motion and the attached documents, the hearing he complains about in paragraph 8 as not having been held by the Adjustment Committee as of the time of the filing of the amended complaint was held on November 22, 2005.  The Adjustment Committee recommended fifteen days disciplinary detention and the loss of two months good-time credit, which was upheld by the warden on November 28, 2005.

In his motion, Moore wants injunctive relief (including expungement of the disciplinary action and

**H.      Claim re Refusal to Provide Results of DNA Testing (Paragraph 9)**

In paragraph 9 of the statement of claim, plaintiff seeks to sue Hope Olson, who is alleged to be the director of the North Dakota crime laboratory division, for refusing to provide Moore with the results of an examination of DNA evidence that Moore alleges has been performed.  Moore claims that the refusal to provide this information violates his constitutional rights and also state law.

What is not clear from Moore's complaint is how the evidence relates to him or why he wants it.  In fact, it is not clear from the pleadings that the analysis, which Moore seeks the results of, was even performed.  However, liberally construing the complaint, Moore probably has alleged enough to assert a claim.

Currently, there is a split in the circuits as to whether or not a § 1983 claim seeking DNA evidence is <u>Heck</u> barred; the Fourth and Fifth Circuits say yes and the Ninth and Eleventh Circuits say no.  <u>Compare</u> <u>Kutzner v. Montgomery County</u>, 303 F.3d 339 (5th Cir. 2002);  <u>Harvey v. Horan</u>, 278 F.3d 370, 375-379 (4th Cir. 2002), rehearing en banc denied 285 F.3d 298 (4th Cir. 2002); <u>with</u> <u>Osborne v. District Attorney's Office for the Third Judicial Circuit</u>, 423 F.3d 1050 (2005); <u>Bradley</u>

---

restoration of good-time credits)  and damages as result of this allegedly additional retaliation.  However, none of this is plead in his amended complaint and Moore cannot avoid the process for amending his complaint by calling these additional complaints and requests for relief a motion.

If the court dismisses the amended complaint pursuant to the undersigned's recommendation, Moore may attempt to re-plead the matters in paragraph 8 along with what he pleads in his motion filed on December 2, 2005, given that the matters may now be exhausted.  However, if he does so, the claim is likely to fail for two reasons.  First, to the extent he would ask for relief that, directly or indirectly, implicates the validity of the denial of his good-time credits, he has no cognizable claim under § 1983 for reasons discussed earlier.  Second, a prisoner cannot make out a claim for retaliation "when the alleged retaliation arose from discipline imparted for acts that a prisoner was not entitled to perform."  <u>Orebaugh v. Caspari</u>, 910 F.2d 526, 528 (8th Cir. 1990) (per curiam); <u>see</u> <u>also</u> <u>Cowans v. Warren</u>, 150 F.3d 910, (8th Cir. 1998).  In this case, it appears from the attachments to Moore's motion that he admitted calling nurse Taghon "a wicked, low down, coniving [sic] spiteful wench."  The court can think of no possible circumstance in which Moore would be entitled to make such intemperate and spiteful remarks.  <u>See</u> <u>Cowans v. Warren</u>, <u>supra</u> (imposition of discipline for prisoner having called correctional officers "racist," "supremacist," and "dogs" in an administrative complaint against the officers did not state a claim for an actionable claim for retaliation under § 1983).

v. Pryor, 305 F.3d 1287, 1288 (11th cir. 2002).  However, only the Ninth Circuit's decision came after the Supreme Court's opinion in Dotson, supra, and, as the Ninth Circuit observes, the decisions of the Fourth and Fifth Circuits are questionable given the analysis of the Supreme Court in Dotson. Osborne, 423 F.3d at 1055-56.

What is more problematic is whether the failure to produce lab results of DNA evidence postconviction implicates any constitutional right cognizable in a § 1983 action.  This appears to be an evolving area of § 1983 law with the issue arising most often in the slightly different contexts of either a demand that the state perform postconviction testing or that the biological evidence be produced for postconviction testing by third parties.  See generally Osborne, 423 F.3d at 1056 (reversing denial of § 1983 claim by district court on Heck grounds and leaving it to the district court on remand to determine in the first instance whether plaintiff has a constitutional claim); Harvey v. Horan, 285 F.3d 298 (4th Cir. 2002) (concurring opinions of C.J. Wilkinson and J. Luttig expressing differing opinions on whether there is a constitutional right to postconviction DNA testing and whether such right is actionable in a § 1983 action);  Moore v. Lockyer, 2005 WL 2334350, *5-9 (N.D. Cal. 2005) (dismissing a § 1983 claim for release of biological evidence  for DNA testing on statute of limitations grounds and thereby avoiding the constitutional issue); Godschalk v. Montgomery County District Attorney's Office, 177 F.Supp.2d 366 (E.D.Pa. 2001) (ordering access to the genetic material for postconviction DNA testing in a § 1983 action).

Subject to the limitation discussed below and the need for Moore to request permission to file a second amended complaint containing only exhausted claims, it is recommended that Moore be allowed to proceed with his § 1983 claim given the novelty of the issues raised, the lack of any controlling Eighth Circuit law case law, and the fact that resolution of the constitutional issue

(should that become necessary) would benefit from a more developed set of facts.  Also, there may

be reasons why Moore is not entitled to the relief he requests that would provide a basis for

disposing of the case without  having to address the constitutional issue.   See, e.g., Moore v.

Lockyer, supra.  For example, it may be that the evidence was not analyzed and no further lab results

are available.

However, it is not recommended that Moore be permitted to proceed with respect to his §

1983 claim to the extent that he seeks to sue defendant Olson for damages, either in her individual

or official capacities.  With respect to a § 1983 suit against Olson in her individual capacity, there

is no possibility of Olson not being entitled to qualified immunity given the novelty of the issues and

the lack of any controlling Supreme Court or Eighth Circuit precedent recognizing an applicable

constitutional right.  E.g., Wilson v. Layne, 526 U.S. 603, 614-618 (1999).  With respect to any §

1983 claim for damages against Olson in her official capacity, this is, in effect, a suit against the

State of North Dakota, for which the State has immunity under the Eleventh Amendment.  E.g.,

Quern v. Jordan, 440 U.S. 332 (1979);  Edelman v. Jordan, 415 U.S. 651 (1974); Alsbrook v. City

of Maumelle, 184 F.3d 999, 1010 (8th Cir. 1999).

Also, Moore should not be permitted to proceed with respect to his state law claims against

Olson in that the court's supplemental jurisdiction does not extend to claims against state agencies

or officials, particularly when no consent to suit has been given in federal court that would apply to

this case.  Pennhurst v. State School & Hosp. v. Halderman, 465 U.S. 89 (1984); Wright & Miller,

Federal Practice & Procedure § 3523.1 & n.70.  Further, even if there is some doubt about a state-

law claim made against Olson in her individual capacity,  Moore's complaint fails to plead the

necessary prerequisites for avoiding the bar imposed by N.D.C.C. §§ 32-12.2-02(1) & 32-12.2-03(1)-(3); see Lawrence v. Roberdeau, 2003 ND 124, ¶13, 665 N.W.2d 719 (2003).

### I.      Claim re Alleged Refusal to Process Grievance Appeals (Paragraph 10)

In paragraph 10 of his statement of claim, Moore claims that Director of Corrections Leann Bertsch has revoked his right to redress of grievances by her alleged recent refusal to respond to appeals from his "step 2 grievances" - at least not within the 30-day time limit that Moore claims applies.  Moore claims this is a denial of First Amendment rights.

However, there is no authority for the proposition that refusal to process an appeal from a grievance determination violates the First Amendment.  See Lomholt v. Holder, 287 F.3d 683, 684 (8th Cir. 2002) (per curiam); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991) (per curiam).  In fact, a violation of prison grievance procedures will generally not give rise to a constitutional violation because grievance procedures do not confer any substantive rights upon inmates.  E.g., Buckley v. Barlow, 997 F.2d 494, 495(8th Cir. 1993) (no constitutional violation in failing to process all of the grievances submitted by the prisoner); Flick v. Alba, supra; Blackman v. Appeals of Coordinator at Corcoran State Prison, 2005 WL 1397785, *1 (E.D.Cal. 2005); see Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003) (no federal constitutional liberty interest in having prison officials follow state law or prison regulations); cf. Sandin v. Conner, 515 U.S. 472, 483-86 (1995).  Consequently, this claim should be dismissed with prejudice.

### III.     CONCLUSION AND RECOMMENDATION

Having conducted an initial review of plaintiff's amended complaint and viewing the mentioned claims in a light most favorable to the plaintiff, it is hereby **RECOMMENDED**:

1.  Plaintiff's claim in paragraph 2 of the statement of claim alleging interference with "privileged mail" be dismissed for failure to state a claim upon which relief be granted, but that the dismissal be <u>without prejudice</u> because it is possible that an amended pleading covering the same subject matter might be cognizable under § 1983 if the mail was "legal" mail.

2.  Plaintiff's claims in paragraphs 3 and 4 of the statement of claim related to good-time credit denial be dismissed for failure to state a claim, but that the dismissal be <u>without prejudice</u> because the underlying conduct possibly could be the subject of a habeas action.

3.  Plaintiff's claim in paragraph 5 of the statement of claim related to the alleged attempt to civilly commit plaintiff be dismissed <u>with prejudice</u> for failure to state a claim and because the claim is frivolous.

4.  Plaintiff's federal and state law claims in paragraph 6 of the statement of claim related to the sharing of medical records be dismissed <u>with prejudice</u> for failure to state a claim and because the claims are frivolous.

5.  Plaintiff's § 1983 claim for damages and all state law claims set forth in paragraph 9 of the statement of claim related to the alleged refusal to provide the results of DNA testing be dismissed <u>with prejudice</u> against defendant Olson in her individual and official capacities because of applicable immunities.

6.  Plaintiff's claim in paragraph 10 for failure to process grievance appeals be dismissed <u>with prejudice</u> for failure to state a claim for which relief can be granted.

7.      The remainder of plaintiff's amended complaint be dismissed for failure to exhaust administrative claims in connection with the claims set forth in paragraph 8.

8.      Moore be permitted to file a seconded amended complaint setting forth only those claims that are exhausted and not otherwise dismissed by the court.

9.      Moore be permitted to proceed with the following claims if he re-pleads them in a second amended complaint:

   a.      Plaintiff's claims in paragraphs 1 & 7 of the statement of claim alleging deliberate indifference with respect to a claimed serious medical condition but, initially, only as to defendants Timothy Schuetzle and Dr. John Hagan and only on a limited basis to determine whether anything has materially changed with respect to Moore's condition since the court's order of February 2, 2005, dismissing his prior action.

   b.      Plaintiff's § 1983 claim relief in paragraph 9 of the statement of claim against defendant Hope Olson, in her official capacity only, related to the alleged denial of the request for DNA results, but limited to injunctive and other non-damage relief.

## <u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>

Pursuant to Local Rule 72.1(3)(4), any party may object to this recommendation within ten (10) days after being served with a copy of this Report and Recommendation.  Failure to file appropriate objections may result in the recommended action being taken.

Dated this 6th day of December, 2005.

/s/ Charles S. Miller, Jr.
Charles S. Miller, Jr.,
United States Magistrate Judge