**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| Anthony James Moore, | ) | **ORDER DENYING PLAINTIFF'S** |
| | ) | **MOTION FOR SUMMARY** |
| Plaintiff, | ) | **JUDGMENT AND GRANTING** |
| | ) | **DEFENDANTS' MOTION FOR** |
| vs. | ) | **SUMMARY JUDGMENT** |
| | ) | |
| Leann K. Bertsch, Director of Department | ) | |
| of Corrections and Rehabilitation, | ) | |
| Timothy Schuetzle, Warden, North Dakota | ) | |
| State Penitentiary, Deputy Warden | ) | Case No. 1:05-cv-098 |
| Robert Coad, Dr. John J. Hagan, Beth | ) | |
| Taghon, Ginny Althoff, Hope Olson, | ) | |
| Dan Wrolstad, and David Krabbenhoft | ) | |
| official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

Before the Court are (1) Plaintiff Anthony James Moore's Motion for Summary Judgment filed on April 17, 2007; and (2) the Defendants' Motion for Summary Judgment filed on May 25, 2007. A response to the Plaintiff's motion was filed by the Defendants on May 29, 2007, and a response to the Defendant's motion was filed by Moore on May 30, 2007. For the reasons set forth below, the Defendant's motion for summary judgment is granted and the Plaintiff's motion for summary judgment is denied.

## I.    BACKGROUND

The Court has previously described the lengthy proceedings in this case in Magistrate Judge Charles S. Miller Jr.'s Order Granting Motion to Amend and for Service of Second Amended Complaint (Docket No. 49). However, a brief summary is warranted. The plaintiff, Anthony James Moore, is an inmate at the North Dakota State Penitentiary (NDSP) in Bismarck, North Dakota. On

September 22, 2005, Moore filed a pro se complaint setting forth eight separate causes of action. <u>See</u> Docket No. 4.  After further review by the Court, all but two claims were allowed to proceed, and Moore was instructed to file a second amended complaint.  In lieu of filing a second amended complaint as instructed, Moore filed an appeal with the Eighth Circuit Court of Appeals on January 4, 2006.  <u>See</u> Docket No. 36.  On February 7, 2007, the Eighth Circuit dismissed Moore's appeal, and Moore subsequently filed a motion for leave to file a second amended complaint.  <u>See</u> Docket No. 42.  The Court granted Moore's motion to file a second amended complaint, and on April 3, 2007, Moore's second amended complaint containing four claims was filed.  <u>See</u> Docket Nos. 49, 50.  On April 17, 2007, Moore filed a motion for summary judgment, and on May 25, 2007, the Defendants filed a motion for summary judgment.

### A.   AN OVERVIEW OF GRIEVANCE PROCEDURE

The Department of Corrections has issued an Inmate Handbook to each inmate at the North Dakota State Penitentiary.  <u>See</u> Docket No. 83, ¶ 5.  The Inmate Handbook provides the procedures that an inmate must follow to file a grievance.  <u>See</u> Docket No. 83-2.  The procedures require an inmate to initially attempt to resolve the grievance informally by talking to the individual or individuals who are the subject of the grievance or control the remedy for the grievance.  If the attempt to informally resolve the problem is not successful, the inmate can file a "Step One Grievance" within fifteen (15) days of the alleged incident.  The grievance form is submitted to the inmate's case manager who investigates the grievance and responds to the inmate.  If the inmate is not satisfied with the response from the case manager, the inmate can appeal to the warden in a

2

"Step Two Grievance." If the inmate is not satisfied with the warden's response, the inmate may appeal to the Director of the Department of Corrections and Rehabilitation.

The grievance procedure also provides that a grievance may be submitted directly to the director of the Department of Corrections and Rehabilitation if the grievance is of a particularly sensitive nature or may cause the inmate to fear possible adverse effects if it is known in the institution that the inmate filed the grievance. Because Moore excessively filed frivolous grievances, Warden Schuetzle restricted Moore's future use of the grievance process by limiting him to the filing of one grievance per week. See Docket No. 83-3.

### B.   MOORE'S CLAIMS

Moore has alleged four claims: (1) that prison officials have retaliated against him in five different instances for participating in the prisoner grievance system; (2) that he has been deprived of copies of DNA reports prepared in connection with his criminal case; (3) that prison officials have acted with deliberate indifference to his medical care; and (4) that prison officials have found him guilty of violating penitentiary rules on three occasions without any evidence to support the finding of guilt. Each claim will be addressed in turn.

### 1)   RETALIATION

#### a.   RONSBERG INCIDENT REPORT

On February 17, 2005, the Chief of Security at the North Dakota State Penitentiary (NDSP) filed an incident report against Moore for sexual harassment. The incident report claimed that Moore had filed a grievance against Brooke Ronsberg, a correctional officer at NDSP, and accused

Officer Ronsberg of having sexual relations with inmates and colleagues. Moore admits that he wrote the grievance against Ronsberg and, although Moore claims the grievance was written in good faith, he refused to meet with staff members who attempted to investigate the claims. See Docket No. 83-5, p. 3.

The disciplinary committee found Moore guilty of sexual harassment for filing the grievance against Ronsberg in bad faith and sanctioned him three months loss of good time and thirty days of disciplinary detention. See Docket No. 83-5. Moore appealed to Warden Schuetzle claiming that the incident report was issued in retaliation for exercising his rights to file a "Step One Grievance" against Ronsberg. Warden Schuetzle denied the appeal on the grounds that Moore's allegations were fabricated, but reduced the guilty finding from sexual harassment to one for "actions hateful to an individual" and "false testimony to staff," which reduced the sanctions to a one month loss of good time and ten days of disciplinary detention. Id. at 4. Moore then appealed the disciplinary action to Director Bertsch. In denying the appeal, Bertsch stated that "[t]here is some evidence that you violated institution rules as charged, and the loss of good time is appropriate. I can find no reason to overturn the Warden's decision." Id. at 1.

### b.   TAGHON INCIDENT REPORT

On October 11, 2005, Beth Taghon, a nurse at the North Dakota State Penitentiary, filed an incident report against Moore for insolence to a staff member. See Docket No. 83-7. The incident report claimed that Moore had filed a complaint with the North Dakota Board of Nursing and described Taghon as "a wicked low down conniving spiteful wench." See Docket No. 83-6.

Moore claims that Taghon refuses to give prisoners who seek help any assistance and does so with a "hateful and demeaning tone and action." Id. Moore also claims that Taghon is a "compulsive, impulsive, habitual pathological liar." Id. Finally, Moore claims that Taghon gave an inmate the wrong medication and thought it was funny, has failed to provide an inmate with prescribed medication, and that Taghon will tell an inmate that she will put his name on doctor call, but does not do it. Id.

The disciplinary committee found Moore guilty of insolence to a staff member for filing insolent statements about Taghon. See Docket No. 83-7. Moore appealed to Warden Schuetzle, claiming that it was issued in retaliation for exercising his rights to file a "Step One Grievance" against Taghon. Warden Schuetzle denied the appeal on the grounds that Moore's allegations were fabricated. Moore then appealed the "Step Two Grievance" to Director Bertsch. In denying the appeal, Bertsch stated that "[Moore] sent a complaint to the Board of Nursing in which you made false, misrepresentative, and defamatory statements about a Penitentiary nurse." Id. Bertsch also denied that the "proceedings were retaliatory" and stated that "[i]t is not retaliatory to discipline an inmate for an actual violation of Penitentiary rules." Id.

### c.   RIXEN INCIDENT REPORT

On December 7, 2006, Daniel Wrolstad filed a Class A incident report for sexual harassment against Moore based on a complaint Moore had submitted to the North Dakota State Library against Mary Rixen. See Docket No. 83-9. In the complaint to the State Library, Moore alleged that "Rixon (sic) is currently having sexual intercourse and relations with numerous prisoners and with

penitentiary employees, namely Daniel Wrolstad." <u>See</u> Docket No. 83-8.  The complaint went on to describe several sexual acts.

Moore refused to meet with the investigating officer and refused to appear at the disciplinary detention hearing.  <u>See</u> Docket No. 83-9, p. 5.  On December 11, 2006, Moore was found guilty of sexual harassment.  Moore appealed the disciplinary committee's action and requested that the incident report be dismissed because "there was never a letter written to the North Dakota State Library....  The document was a complaint against Mary Rixon (sic)."  <u>See</u> Docket No. 83-9, p. 3.  Moore went on to contend the incident report by Wrolstad "is sheer retaliation thus unconstitutional and illegal."  <u>Id.</u>

### d.    <u>ALTHOFF INCIDENT REPORT</u>

On February 24, 2007, nurse Ginny Althoff filed a Class A incident report for insolence to a staff member against Moore for a letter that Moore had written to the North Dakota State Board of Nursing on January 17, 2007.  In Moore's letter to the Board of Nursing, Moore claimed that Althoff had a sexual interest in him and that she told others that he has a sexual interest in her colleagues.  <u>See</u> Docket No. 83-10.  Moore also claimed that Althoff does not follow proper nursing policies and procedures.  <u>Id.</u>

Moore refused to talk to the investigating officer or appear at the hearing.  He was ultimately found guilty of actions hateful or demeaning to an individual.  In his appeal, Moore argued that the incident report should be dismissed because it constituted retaliation.  <u>See</u> Docket No. 83-11, p. 3.  Warden Schuetzle denied the appeal, stating that "[y]ou choose to write false, hateful allegations

6

about RN Althoff to her credentialing body, the Board of Nursing.  None of your statements was founded in truth and you provided no evidence to back up your allegations."  Id.

### e.    KRABBENHOFT INCIDENT REPORT

Moore contends that the fifth incident of retaliation was by Dave Krabbenhoft for Moore's filing of a grievance against Unit Manager Jean Sullivan, an employee at the NDSP.  On February 26, 2007, Moore bypassed the grievance procedure and submitted a grievance directly to Director Bertsch.  See Docket No. 83-12.  In his summary of the grievance, Moore wrote:

> Against Jean Sullivan for intentionally walking around in the administrative segregation department with her pants unbuttoned and unzipped wearing see through panities (sic) from Victorias (sic) Secret.  This grievance is of a sensitive nature the complaint (sic) fears adverse effects for it is known in the facility this is the reason for filing and submitting this grievance directly to you.

See Docket No. 83-12.  On February 27, 2007, Krabbenhoft filed a Class A incident report against Moore for sexual harassment based on the statements made by Moore in his grievance regarding Sullivan.  See Docket No. 83-13, p. 4.  Moore again refused to talk to the investigating officer and refused to appear at the disciplinary hearing.  See Docket No. 83-13, p. 5.  In denying Moore's appeal of the disciplinary committee's decision, Warden Schuetzle told Moore that "you can't use the grievance process for your own sexual gratification and that you must write factual grievances." See Docket No. 83-13, p. 3.  Moore then appealed the disciplinary committee's decision to Director Bertsch.  See Docket No. 83-13, p. 2.  In denying Moore's appeal, Director Bertsch informed Moore that "[w]e are not here to entertain your perverted fantasies and I will not tolerate your abuses of the grievance system."  See Docket No. 83-13, p. 1.

### 2)        PRODUCTION OF DNA RESULTS

Moore contends that the North Dakota Crime Laboratory, a division within the Attorney General's Office, failed to produce documents that Moore requested concerning his DNA profile. Specifically, Moore contends that Hope Olson, the Director of the North Dakota Crime Lab, has refused to provide Moore with a copy of his DNA test results under laboratory number C04-1175 that was conducted in 2004, as well as a copy of Moore's DNA genotype profile for laboratory specimen identification number C0-02-0039.  See Docket No. 50, Second Amended Complaint, pp. 4-5.

Moore has filed several lawsuits with respect to his demands for his DNA laboratory test results under laboratory number C04-1175 and DNA genotype profile for specimen C0-02-0039. One complaint was filed in Cass County District Court, in Fargo, North Dakota, but was dismissed. Moore has also filed a lawsuit in Federal District Court for the District of North Dakota against the Fargo Police Department seeking the same DNA test information.  See Case No. 1:06-cv-095.  In that case, Moore was provided with copies of his DNA test results under laboratory number C01-1753 dated October 18, 2001 and November 21, 2001, as well as results under laboratory number C04-1175 dated May 17, 2004, and March 21, 2006.  See Moore v. Fargo Polic Dept., Case No. 1:06-cv-095 (D.N.D. April 23, 2007), Docket Nos. 42, 50-2.  The record also reflects that Moore received a copy of his genotype profile sent to him by the Cass County State's Attorney in connection with the lawsuit in Cass County, North Dakota.

In support of the Defendants' motion for summary judgment, Hope Olson has submitted copies of laboratory report No. C04-1175 dated May 17, 2004, as well as report No. C0-4-1175 dated March 21, 2006.  See Docket Nos. 86-2 and 86-3.  Further, Hope Olson has submitted a

genotype profile for laboratory specimen number C0-02-0039.  See Docket No. 86-6.  In the affidavit accompanying the submittal of these documents, Hope Olson attests that there are no other reports or test results responsive to Moore's requests.  See Docket No. 86, ¶ 10.

### 3)    DELIBERATE INDIFFERENCE TO MEDICAL CARE

Moore contends that the North Dakota State Penitentiary, its staff doctor, and Warden Schuetzle have failed to provide adequate medical care for his serious medical needs.  See Docket No. 50, p. 2.  Moore contends that the defendants have failed to treat him for elevated amylase, small phleboliths in his pelvis area, and have failed to give him the prescription medication Flagyl. Id.

Moore has a long history of complaints regarding medical care and treatment.  In July 2005, while Moore was at the Cass County jail in Fargo, North Dakota, he complained of severe stomach pains and was transported to Meritcare Medical Center Emergency Room in Fargo.  See Docket No. 85, Affidavit of John J. Hagan, M.D., ¶ 5.  A number of lab tests were performed on Moore, but nothing abnormal was found by the doctor at Meritcare.  Id. at ¶ 6.  Although nothing abnormal was found, the Meritcare physician did identify from laboratory tests that Moore had elevated readings of the amylase enzyme, and an X-ray report of Moore's abdomen indicated the presence of "[s]mall phleboliths in the lower pelvis."  Id.  Moore was not treated for these symptoms while at Meritcare and was returned to the Cass County jail with instructions to see his regular physician when he returned to the NDSP the following week.

Upon his return to the NDSP, Moore has continuously demanded that the medical staff treat him for elevated amylase and small phleboliths in his lower pelvic area.  Id. at ¶ 8.  Dr. Hagan, the

NDSP staff physician, explained to Moore that there is no treatment for elevated amylase and has identified no significance of elevated amylase in relation to Moore's complaints.  Id. at ¶ 9, see also Docket No. 85-2.  Dr. Hagan also noted that there is no treatment for phleboliths, which are small calcified blood clots in the pelvic veins which are routinely noted as incidental findings on X-rays in up to 50% of adults who are 40 years of age or older.  Id.  Moore has been offered further lab testing for amylase and lipase levels, as well as an abdominal and pelvic CT scan to determine whether he has pancreatic problems, but Moore has refused these tests.  Id.  Moore contends that "doctor hagan response to the platiffs having blood clots is nonsense and insane the blood clots are fatal and left untreated will result in my death."  See Docket No. 94, p. 5 (errors in original).

In addition to his complaints of elevated amylase and small phleboliths, Moore has consistently complained  over the past three years of stomach pain and of having parasites in his gastrointestinal system.  On October 20, 2004, Moore saw Dr. Yaser Rayyan to ascertain the cause of his gastric problems, and the alleged prescription for Flagyl arose in connection with that evaluation.  See Docket No. 85-4.  The specialist, Dr. Rayyan, evaluated Moore and found nothing abnormal in his evaluation or in the laboratory tests.  Id.  Dr. Rayyan did note that the stool test for Giardia is not very sensitive, and recommended **either** "a repeat stool test for Giardia specific antigen **or** an empirical treatment with Flagyl 500 g three times a day for five days."  Id. (emphasis added).  Moore's treating physician, Dr. Hagan, offered Moore an opportunity to have a repeat stool test for Giardia.  However, Moore has refused the test and contends that the Defendants have failed to follow Dr. Yaser Rayyan's "recommendation that the plaintiff be treated empirically with the prescription medication of and with Flagyl for 5 days 500 millagrams (sic) 3 times a day."  See Docket No. 50.

10

4)      **DUE PROCESS CLAIMS**

Moore also contends that he was found guilty of incident reports on three separate occasions without any evidence to support his findings.  See Docket No. 50, p. 4.   The three findings of guilt that Moore complains of are for 1) a charge of self-mutilation on January 29, 2004; 2) charges of unauthorized attendance, theft, and disorderly conduct on January 21, 2005; and 3) a charge of false testimony to staff on January 11, 2005.[1]

a.      **SELF-MUTILATION INCIDENT**

Moore's self-mutilation claim centers around the allegation that Moore purposely reinjured a finger on which he had previously had surgery so that he could have a second surgery performed. On July 28, 2003, Moore requested ibuprofen for his left hand which he had jammed playing basketball the previous evening.  See Docket No. 84, Exhibit 2, Affidavit of Kathleen Bachmeier, ¶ 3.  On July 29, 2003, Moore was taken to the walk-in clinic for evaluation.  Id.  Moore was referred to Dr. Tugrul Kihtir, a plastic surgeon, who recommended treatment with an extension splint.  Id.

At Moore's request, he was sent to Dr. Rick Becker, a plastic surgeon at St. Alexius Medical Center, for another opinion on his finger.  See Docket No. 184, Affidavit of Kathleen Bachmeier, ¶ 5.  On November 12, 2003, Dr. Becker performed surgery on Moore's finger.  Id. at ¶ 6.  On a follow-up visit with Dr. Becker on December 15, 2003, Moore was prescribed two more weeks with

---

[1]  Moore claims that the incident reports were for incidents occurring on January 29, 2004, January 19, 2005, and January 31, 2005.  See Docket No. 50, P. 4.  The NDSP records submitted by Moore show incident reports for January 29, 2004, January 11, 2005, and January 21, 2005.  See Docket Nos. 50-12, 50-16, and 50-19.  It is presumed that these are the incident reports Moore meant to identify.

the splint and then light activity for two weeks.  Id.  Moore was scheduled to return to see Dr.

Becker on January 5, 2004.  Id.

On December 29, 2003, Dr. Hagan examined Moore's finger.  Id. at ¶ 8.  On January 2,

2004, Moore wrote a letter to the physicians who had been involved in the treatment, the director

of medical services at NDSP, a nurse, and the Deputy Warden.  See Docket No. 84-4, Exhibit 2-C.

In his letter Moore stated:

> Good morning, doctor becker performed surgery on my finger, the infirmary staff
> at the north dakota state penitentiary is needlessly preventing me from seeing doctor,
> doctor beckers orders were for me to see him in his office which was on December
> 29 2003 Monday there is something wrong that must be corrected i don't want legal
> problems i want my finger checked and fixed now, i respectfully request to be seen
> by doctor becker immediately failure to do so is a deliberate indifference in medical
> treatment that is continued, enclosed is a certificate of service by mail, as proof of
> service upon you all thank you for your time do have a wonderful day.

Id. (errors in original).

On January 4, 2004, Moore sent another letter to Dr. Hagan, Kathy Bachmeier, and Lana

Kuntz.  It provided as follows:

> good morning, my right finger split open on Friday January 2, 2004 which caused
> bleeding, it is also extremely painful and swollen, doctor rick c. becker ordered for
> me to be seen by him on December 29 2003, doctor john hagan kathy bachmeier
> lana knutz have all disregarded doctor becker order and replace it with there own
> you all are needlessly preventing me from seeing doctor and denying me medical
> services of which are required to fully and finally fix my finger, i respectfully
> request to be seen by doctor becker immediately due to not seeing doctor as he
> ordered not on schedule that has caused permenent damage and irreversable effects,
> this is also a continued deliberate indifference manifesting itself into another form
> by inflicting constant pain, thank you for your time do have a wonderful day.

See Docket No. 84-5, Exhibit 2-D (errors in original).

On January 29, 2004, Correctional Officer Daniel Gleich filed an incident report against

Moore charging him with "self-mutilation, self-destruction and failure to comply with recommended

medical treatment."[2]  See Docket No. 83-14, p. 6.  The incident report stated that "Moore admitted

to the Doctor that he had forced his finger to bend."  Id.  Officer Gleich and Officer Justin Heidt

both heard Moore tell Dr. Becker that he had forced his finger to bend.  See Docket No. 83-14, pp.

8-9.  Moore was penalized with one month's loss of good time and 15 days disciplinary detention

for the intended self-mutilation.  Id. at 5.  Dr. Becker's notes from Moore's January 29, 2004,

appointment do not mention that Moore had intentionally injured his finger.  See Docket No. 83-14,

p. 12.  Dr. Becker noted that the scar tissue needed to mature before any surgery could be performed

and suggested an appointment in one to two months to discuss treatment plans.  Id.  The defendants

contend that Moore pleaded with the doctor to redo his surgery and that Moore said he was sorry

and would not harm his finger again.  See Docket No. 84, Affidavit of Kathleen Bachmeier, ¶ 11.

Moore contends that Dr. Becker's written account of the January 29, 2004, appointment "clearly

shows the plaintiff did not bend or break or manipulate his finger to have surgery done."  See

Docket No. 94, p. 4.

On February 12, 2004, Moore appealed the disciplinary committee's decision stating that

he "did not bend [his] finger to get surgery redone, the disciplinary committee is wrong."  See

Docket No. 83-14, p. 4.  In his appeal, Moore also argued that the incident report was not delivered

to him within seven days after its completion.  Id. at 3.  On February 17, 2004, Warden Schuetzle

denied the appeal stating that

> [t]he report was delivered to you 1/30/04 at 11:10 AM, about 26 hours after the
> incident, by Captain Mittelstadt.  You were investigated and advised of these
> charges by Capt. Millelstadt, also on 1/30/04.  Due process was followed.  Your

---

[2]  Moore has previously litigated issues surrounding treatment of his finger in a civil case alleging
deliberate indifference to his serious medical needs.  See Moore v. Bachmeier, Civ. No. 1:04-cv-038 (D.N.D. Feb.
2, 2005).

> hearing was scheduled for 2/2/04 but was re-scheduled for 2/12/04. There is nothing
> wrong with this.  You were given notice of the hearing and had ample time to
> prepare your defense.

 Id.  On February 18, 2004, Moore appealed the decision to Director Elaine Little, asserting that

Deputy Warden Robert Coad is retaliating against Moore through the disciplinary action and that

he "did not bend or break my finger to get another surgery redone." Id. at 2.  Director Little denied

the appeal on the grounds that "[t]he facts support the charge and finding of guilt...." Id. at 1.


### b.    UNAUTHORIZED ATTENDANCE, THEFT, AND DISORDERLY CONDUCT INCIDENT

On January 21, 2005, an incident report was filed against Moore for attendance in an

unauthorized area, theft of property, disorderly conduct, and tampering with a locking device.  See

Docket No. 83-15, p. 5.  The incident report was filed based on reports from several confidential

informants[3] that Moore had returned a book to the penitentiary law library which Moore said he

took from the law library, although the book had not been checked out.  See Docket No.  83-15,

pp. 5-6.  When Moore returned the book to the law library, another inmate and confidential

informant in the law library told the first inmate that, the day before, he saw Moore crawling over

the counter separating the law library clerk's side, where the books are kept, from the inmate's

working area.  In all, three confidential informants wrote out and signed statements about what they

observed.  See Docket No. 83-15, pp. 10-13.  The Disciplinary Committee found the confidential

informants' written statements to be credible, stating that

---

[3]  The Disciplinary Committee stated that the reasons for not disclosing the identity of the confidential
informants was for "their personal safety and security at this facility."  See Docket No. 83-15, p. 4.

> Two sources (sic) statements matched in that Anthony Moore brought the law
> library book back on 1-21-05 (that was missing).  One source personally observed
> Anthony crawl over the counter and was coming out of the law clerk's side.  The
> fact that the law clerks were looking for the missing law book, Anthony brought the
> book back on the 21st....   All sources are credible because their information
> corroborated.

See Docket No. 83-15, p. 4.  The Disciplinary Committee found Moore guilty of all charges.  Id.

Moore appealed the finding on February 1, 2005, and asked that the charge of tampering

with a locking device be dismissed.  Moore also contended that the informants' statements were all

lies.  Id. at 3.  Warden Schuetzle dismissed the charge of tampering with a locking device, but

denied the appeal as to the other charges.  Id.  On February 7, 2005, Moore appealed the decision

to Director Little.  Id. at 2.  In denying the appeal, Director Little stated that "[t]here is some

evidence that you violated the institution rules, and the loss of good time is appropriate.  I can find

no reason to overturn the Warden's decision."  Id. at 1.

### c.   FALSE TESTIMONY INCIDENT

On January 11, 2005, an incident report was filed against Moore charging him with "false

testimony presented to staff," a Class A infraction.  See Docket No. 83-16, p. 5.  The incident report

states that Moore forged another inmate's name on the grievance, filed it, and then lied about it to

officers.  The incident report cited to other sample grievances from both Moore and the other inmate

for style comparisons.  Id. at 6, 10, and 12-14.

A Step 1 Inmate Grievance Form filed on January 1, 2005, listed the grievance as:

> against barbara bailey for actions hateful and demeaning towards a prisoner by
> everytime she sees me she will make a hateful demeaning sarcastic statement
> directed towards me the last time that this happen was on January 1, 2005, attempt

15

> made to solve the problem knocked on the lieutenants door on jnauary 1 2005 in an
> attemp to speak to him about tthis matter remedy requesting is for ms barbara bailey
> to be remove from the traffic area immediately.

Id. at 12 (errors in original).  The grievance was signed "Chris Sheldon."  Id.  The correctional

officers noted that the style of wording and the manner in which the grievance was typed, all lower-

case, was similar to previous grievances filed by Moore and different from previous grievances filed

by Sheldon.  Id.  Also, Moore had previously signed and filed a "Step One" and "Step Two"

Grievance against Barbara Bailey on October 4, and 5, 2004, for the same issue.  Those grievances

were typed in the same manner and stated in part as follows:

> against barbara bailey for actions and activities hateful and demeaning towards a
> prisoners attempts made to solve the problem submitted a step 1 grievance, remedy
> requesting is to remove ms bailey off of traffic or relocate her immediately

Id. at 15 (errors in original).  Additionally, Moore filed another "Step One" grievance against Bailey

on January 10, 2005, shortly after the forged grievance was filed.  Id. at 14.  That grievance was

handwritten and stated in part:

> against Barbara Bailey for harassment, and singling out of an prisoner, everytime
> that Ms Bailey sees me.  She will go out of her way to say something to me that is
> sarcastic, hateful and demeaning.... Attempts made to solve the problem have
> ignored Ms. Bailey actions numerous times.  Remedy requesting is th remove Ms.
> Bailey off of traffic immediately....

Id. (errors in original).

In finding Moore guilty, the Disciplinary Committee noted that Moore did not admit to

typing or writing the grievance, that Chris Sheldon, the inmate whose name was on the grievance,

denied writing the grievance, and that the grievance was "very similar in style and content as the

grievance Mr. Moore admits typing" regarding Bailey.  Id. at 5.  In his appeal to Warden Schuetzle,

Moore contended that "there [was] absolutely no evidence against me to support the total (sic)

manufactured incident report." <u>Id.</u> at 3.  In his appeal to Director Little, Moore again stated in part that "there [was] absolutely no evidence against me to support the ridiculous manufactured incident report by Mr. Steve Heit." <u>Id.</u> at 2.  Director Little denied Moore's appeal stating that "the evidence presented [was] more than enough to show that you violated institution rules as charged." <u>Id.</u> at 1.

## II.   <u>STANDARD OF REVIEW</u>

It is well-established that summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>Clark v. Kellogg Co.</u>, 205 F.3d 1079, 1082 (8th Cir. 2000).  A fact is "material" if it might effect the outcome of the case and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The basic inquiry for purposes of summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.  <u>Quick v. Donaldson Co., Inc.</u>, 90 F.3d 1372, 1376 (8th Cir. 1996).  The moving party has the initial burden of demonstrating to the Court that there are no genuine issues of material fact.  If the moving party has met this burden, the non-moving party cannot simply rest on the mere denials or allegations in the pleadings.  Instead, the non-moving party must set forth specific facts showing that there are genuine issues for trial.  Fed. R. Civ. P. 56(e); <u>Krein v. DBA Corp.</u>, 327 F.3d 723, 726 (8th Cir. 2003).  A mere trace of evidence supporting the non-movant's position is insufficient.  A non-movant must present more than a scintilla of evidence and

must present specific facts to create a genuine issue of material fact for trial.  F.D.I.C. v. Bell, 106

F.3d 258, 263 (8th Cir.1997). The facts must generate evidence from which a jury could reasonably

find for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).


III.    **LEGAL DISCUSSION**

 A.    **RES JUDICATA AND COLLATERAL ESTOPPEL**

  The Court finds that three of Moore's claims are barred by the doctrines of res judicata and

collateral estoppel.  The claims that are barred are: 1) Moore's claim of retaliation based on the

Taghon incident report; 2) Moore's claim of deliberate indifference to medical care for the failure

to treat him with the prescription medication Flagyl; and 3) Moore's due process claim regarding

the self-mutilation incident.

  The doctrine of res judicata provides that "[a] final judgment on the merits of an action

precludes the parties or their privies from relitigating issues that were or could have been raised in

that action."  Federated Dept. Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981).  The doctrine of res

judicata bars a later suit when (1) the first suit resulted in a final judgment on the merits; (2) the first

suit was based on proper jurisdiction; (3) both suits involved the same cause of action; and (4) both

suits involved the same parties or their privies.  Ward v. Arkansas State Police, 653 F.2d 346 (8th

Cir.1981).  The doctrine is applied only when the party against whom the earlier decision is being

asserted had a "full and fair opportunity" to litigate the issue in question.  Kremer v. Chemical

Construction Corp., 456 U.S. 461, 481 n. 22,(1982).

  Collateral estoppel, or issue preclusion,  "means simply that when an issue of ultimate fact

has once been determined by a valid and final judgment, that issue cannot again be litigated between

the same parties in any future lawsuit." <u>Stoebner v. Parry, Murray, Ward & Moxley</u>, 91 F.3d 1091,

1094 (8th Cir. 1996).  Before collateral estoppel will bar relitigation of a fact or issue involved in

an earlier lawsuit, four tests must be met:

> (1) Was the issue decided in the prior adjudication identical to the one presented in the action in question?; (2) Was there a final judgment on the merits?; (3) Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?; and (4) Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?

<u>Id.</u>


### 1)  TAGHON INCIDENT REPORT

The Court previously addressed Moore's claim of retaliation for a complaint against Nurse

Taghon that Moore had sent to the North Dakota Board of Nursing.  <u>See</u> <u>Moore v. Schuetzle</u>, 486

F. Supp. 2d 969, 985-986 (D.N.D. 2007).  Thus, the Court will examine whether Moore's claim is

barred by the doctrine of collateral estoppel.

With regard to the four criteria required for collateral estoppel, first, Moore raises the same

issue of retaliation based upon the same letter to the North Dakota Board of Nursing and the same

incident report and disciplinary committee finding of guilt.  Second, this Court thoroughly reviewed

the record and the existing case law and entered summary judgment against Moore on the claim.

Third, Warden Schuetzle is the party against whom Moore's retaliation claim is alleged and

Schuetzle is a defendant in both this case and the previous case.  <u>See</u> <u>Moore v. Schuetzle</u>, 486 F.

Supp. 2d 969, 985-986 (D.N.D. 2007).  Finally, the Court finds that Moore was given a fair

opportunity to be heard on the issue.  In addition to filing his own motion for summary judgment

and reply in the previous case, Moore also submitted a response to the defendant's motion for

19

summary judgment along with numerous affidavits and statements of material fact.  Thus, the Court finds that Moore's claim of retaliation stemming from the Taghon incident report is barred by the doctrines of res judicata and collateral estoppel.

### 2)   DELIBERATE INDIFFERENCE TO MEDICAL NEEDS REGARDING TREATMENT WITH FLAGYL AND DUE PROCESS CLAIM REGARDING SELF MUTILATION

The Court previously addressed claims regarding Moore's gastric complaints and alleged denial of treatment for Moore's jammed finger in a case filed in April of 2004.  See Moore v. Schuetzle, et al., Case No. 1:04-cv-038 (D.N.D. February 2, 2005).  In that case, Moore brought a 42 U.S.C. § 1983 action against Timothy Schuetzle, Elaine Little, Robert Coad, Denise Senger, Kathleen Bachmeier, Cordell Stromme, Mirna Stromme, Dr. Jeff Hostetter, and Dr. John Hagan, alleging, among other things, claims for deliberate indifference to serious medical needs.  The Court issued an order granting the defendants' motion for summary judgment, and the Clerk of Court entered judgment against Moore.  Case No. 1:04-cv-038, Docket No. 155 p. 32.

Moore's claims in that case included detailed factual allegations regarding Moore's treatment for abdominal, gastric, and testicular complaints, including Moore's claims of refusal of the penitentiary staff and Dr. Hagan to provide Moore with the prescription medication Flagyl. Case No. 1:04-cv-038, Docket No. 155 pp. 13-15.  Further, in his response to the motion for summary judgment in the Case No. 1:04-cv-038, Moore stated that NDSP officials had acted with deliberate indifference to his medical needs for failing to provide him with the prescription medication Flagyl.  Case No. 1:04-cv-038, Docket No. 152, p. 6.

Case No. 1:04-cv-38 also included a claim for deliberate indifference to medication needs for the for the refusal of the NDSP to provide Moore with a second surgery on the finger that Moore was found guilty of self-mutilating.  <u>See</u> Case No. 1:04-cv-038, Docket No. 155.  In Moore's response to the motion for summary judgment, he argued that he "did not sabotage the recent repair on my finger surgery...there is no record from doctor becker that the plaintiff sel-mutilation or re-injurying finger intentionally."  <u>See</u> Case No. 1:04-cv-038, Docket No. 152, p. 10 (errors in original).

It is clear that Moore's lawsuit in 2004 resulted in a final judgment on the merits, and that the suit was based on proper jurisdiction.  Both suits were based on a 42 U.S.C. § 1983 challenge involving identical facts.  There is a substantial overlap between the defendants in Case No. 1:04-cv-038 and those in this case, including Warden Timothy Schuetzle, Robert Coad, and Dr. John Hagan.  Case No. 1:04-cv-038 named the Director of the Department of Corrections and Rehabilitation at the time, Elaine Little, and the present lawsuit includes the new Director, Leann Bertsch.  The Court finds that both lawsuits, and more specifically the defendants targeted in the claims, involve the same parties or their privies.  Finally, Moore filed a plethora of motions and requests in Case No. 1:04-cv-038, and it is clear to the Court that Moore had a full and fair opportunity to litigate the issues in question.  The Court finds that Moore's claims regarding deliberate indifference to Moore's medical needs and due process violations for the self-mutilation of Moore's hand are barred by the doctrines of res judicata and collateral estoppel.

### B.  RETALIATION

Moore alleges that prison officials impermissibly retaliated against him for exercising his legal rights by issuing incident reports with resulting sanctions.  It is clear that prison officials cannot impose a disciplinary sanction against a prisoner in retaliation for the prisoner's exercise of his constitutional rights.  Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1986).  "However, if the discipline which the prisoner claims to have been retaliatory was in fact imposed for an actual violation of prisoner rules or regulations, then the prisoner's claim that the discipline was retaliatory in nature must fail."  Goff v. Burton, 7 F.3d 734, 738 (8th Cir. 1993).  If the prison officials provide "some evidence" to support the disciplinary action, the inmate will not prevail on his retaliatory claim.  Id. at 739 (providing that the standard of review of a disciplinary committee's determination that a prisoner committed a violation is that "some evidence" exists to support the decision).

### 1)  RONSBERG INCIDENT REPORT

Moore contends that he was retaliated against by Cordell Stromme for filing a "Step One" grievance against Brooke Ronsberg.  See Docket No. 83-5, p. 3.  In his grievance, Moore made sexual allegations about Ronsberg including claiming that she had sexual relations with inmates and colleagues.  Stromme filed an incident report against Moore based on the content of Moore's grievance.  The disciplinary committee found Moore guilty of sexual harassment.  Warden Schuetzle denied Moore's appeal and upheld the findings but reduced the charge finding that the disciplinary committee's sanctions were too harsh.  Id.  Director Little denied Moore's subsequent appeal.  The incident report states that the grievance was not based on any facts.  Id. at 4.  Moore

22

has failed to provide any evidence or facts to support his grievance, but maintains the contention that the grievance was written in good faith. Id. at 3.

After a thorough review of the record, it is clear that Moore has violated prison rules and regulations by making unsubstantiated allegations about Ronsberg. It is clear and undisputed that Moore produced no evidence during the course of the investigation into the incident report but simply asserts that the grievance was written in good faith. Moore admits that he wrote and sent the grievance against Brooke Ronsberg, and the letter speaks for itself. Because Moore's claim of retaliatory discipline is based on an actual violation of prison rules and regulations, the claim fails. The Court finds that Moore's claim of retaliatory discipline as to the Ronsberg incident report fails as a matter of law because the disciplinary actions taken against Moore were imposed for a violation of prison rules or regulations.

### 2)   RIXEN INCIDENT REPORT

Moore also contends that he was retaliated against by Officer Daniel Wrolstad by the filing of an incident report in response to a complaint that Moore submitted against Mary Rixen with the North Dakota State Library. In the complaint to the State Library, Moore alleged that "Rixon (sic) is currently having sexual intercourse and relations with numerous prisoners and with penitentiary employees, namely Daniel Wrolstad." See Docket No. 83-8. The complaint went on to describe several sexual acts. Moore refused to meet with the investigating officer and refused to appear at the disciplinary detention hearing. See Docket No. 83-9, p. 5. On December 11, 2006, Moore was found guilty of sexual harassment. Moore appealed the disciplinary committee's action and requested that the incident report be dismissed because "there was never a letter written to the North

Dakota State Library....  The document was a complaint against Mary Rixon (sic)."  See Docket No. 83-9, p. 3.  Moore went on to contend the incident report by Wrolstad "is sheer retaliation thus unconstitutional and illegal."  Id.  Moore's appeals were denied.

The record overwhelmingly reveals that Moore has violated prison rules and regulations. Moore was given a disciplinary hearing for his conduct violation but refused to attend or provide any evidence.  Because Moore's claim of retaliatory discipline is based on an actual violation of prison rules and regulations, the claim fails.  The Court finds that Moore's claim of retaliatory discipline as to the Rixen incident report fails as a matter of law because the disciplinary actions taken against Moore were imposed for a violation of prison rules or regulations.

### 3)      ALTHOFF INCIDENT REPORT

Moore contends that nurse Ginny Althoff retaliated against him by the filing of an incident report.  See Docket No. 50, p. 3.  Moore contends that the reason for the retaliation was that Moore had submitted a complaint to the North Dakota Board of Nursing on January 17, 2007.  In Moore's letter to the Board of Nursing, Moore claimed that Althoff had a sexual interest in him and that she told others that Moore has a sexual interest in her colleagues.  See Docket No. 83-10.  Moore also claimed that Althoff does not follow proper nursing policies and procedures.  Id.

Moore refused to talk to the investigating officer or appear at the hearing, and ultimately was found guilty of actions hateful or demeaning to an individual.  In his appeal, Moore argued that the incident report should be dismissed because it constituted retaliation.  See Docket No. 83-11, p. 3. Warden Schuetzle denied the appeal stating that "[y]ou choose to write false, hateful allegations

24

about RN Althoff to her credentialing body, the Board of Nursing.  None of your statements was founded in truth and you provided no evidence to back up your allegations." Id.

It is undisputed that Moore made sexually explicit statements claiming that Althoff had a sexual interest in Moore and that Moore had a sexual interest in Althoff's colleagues.  See Docket No. 83-11, p. 8.  The allegations were thoroughly investigated and Moore failed to provide any evidence to substantiate any of his allegations.  Moore's sole contention is that the letter was written in good faith.  Id. at 3.  It is clear that Moore's claim of retaliatory discipline is based on an actual violation of prison rules and regulations and, therefore, the claim fails.  The Court finds that Moore's claim of retaliatory discipline as to the Althoff incident report fails as a matter of law because the disciplinary actions taken against Moore were imposed for a violation of prison rules or regulations.

### 4) KRABBENHOFT INCIDENT REPORT

Moore contends that the fifth incident of retaliation was by Dave Krabbenhoft for Moore's filing of a grievance against Unit Manager Jean Sullivan, an employee at the NDSP.  On February 26, 2007, Moore bypassed the grievance procedure and submitted a grievance directly to Director Bertsch.  See Docket No. 83-12.  In his summary of the grievance, Moore wrote:

> Against Jean Sullivan for intentionally walking around in the administrative segregation department with her pants unbuttoned and unzipped wearing see through panities (sic) from Victorias (sic) Secret.  This grievance is of a sensitive nature the complaint (sic) fears adverse effects for it is known in the facility this is the reason for filing and submitting this grievance directly to you.

See Docket No. 83-12.

On February 27, 2007, Krabbenhoft filed a "Class A" incident report against Moore for sexual harassment based on the statements made by Moore in his grievance regarding Sullivan.  See

25

Docket No. 83-13, p. 4.  Moore again refused to talk to the investigating officer and refused to appear at the disciplinary hearing.  <u>See</u> Docket No. 83-13, p. 5.  In denying Moore's appeal of the disciplinary committee's decision, Warden Schuetzle told Moore that "you can't use the grievance process for your own sexual gratification and that you must write factual grievances."  <u>See</u> Docket No. 83-13, p. 3.  Moore then appealed the disciplinary committee's decision to Director Bertsch. <u>See</u> Docket No. 83-13, p. 2.  In denying Moore's appeal, Director Bertsch informed Moore that "[w]e are not here to entertain your perverted fantasies and I will not tolerate your abuses of the grievance system."  <u>See</u> Docket No. 83-13, p. 1.

The record overwhelmingly reveals that Moore violated prison rules and regulations. Because Moore's claims of retaliatory discipline are based on actual violations of prison rules and regulations, the claims fail.  The Court finds that Moore's claim of retaliatory discipline as to the Krabbenhoft incident report fails as a matter of law because the disciplinary actions taken against Moore were imposed for violations of prison rules or regulations.

After an exhaustive review of the entire record and current case law, the Court concludes that Moore's claims of retaliation are based on legitimate disciplinary actions taken against Moore for actual violations of prison rules and regulations.  In essence, Moore seems to confuse retaliation with legitimate disciplinary consequences for his misdeeds.  Moore has failed to state a claim for retaliation and there is no constitutional violation alleged.  The Court finds that Moore's claims of retaliation fail as a matter of law.

26

C.      **DNA RECORDS**

In his complaint, Moore requests that the Court order Hope Olson to provide him with the DNA test results records under laboratory number C04-1175 conducted in the year 2004, as well as a copy of Moore's DNA genotype profile under C0-02-0039.  See Docket No. 50, Second Amended Complaint pp.4- 6.  Moore contends that his failure to receive these reports have deprived him of "the opportunity to make a conclusive showing that [he] is actually innocence (sic) of the crime for which he is incarcerated for (sic).  Id. at 5.

Moore has filed several lawsuits with respect to his demands for his DNA laboratory test results under laboratory number C04-1175 and DNA genotype profile for specimen C0-02-0039. One complaint was filed in Cass County District Court, North Dakota, and that case was dismissed. Moore has also filed a lawsuit in Federal District Court for the District of North Dakota against the Fargo Police Department seeking the same DNA test information.  See Case No. 1:06-cv-095.  In that case, Moore was provided with a copies of his DNA test results under laboratory number C01-1753 dated October 18, 2001 and November 21, 2001, as well as results under laboratory number C04-1175 dated May 17, 2004, and March 21, 2006.  See Case No. 1:06-cv-095, Docket Nos. 42, 50-2.

It is clear that Moore has received a copy of his DNA test results under laboratory number C04-1175 in his previous lawsuit in Federal District Court for the District of North Dakota.  Even if Moore did not already possess the documents he requests, Hope Olson has submitted copies of laboratory report No. C04-1175 dated May 17, 2004, in support of the Defendants' motion for summary judgment.  See Docket Nos. 86-2.  It is of critical importance to note that no further reports

were completed in 2004 <u>because Moore admitted that he had sex with the victim</u>.  <u>See</u> Docket No. 86, ¶ 4 (emphasis added).

Based on the disclosure that Moore admitted to having sex with the victim, the Court finds that his arguments regarding the deprivation of an opportunity to show his innocence are disingenuous and frivolous.  Further, as discussed below, Moore has been provided with all of DNA reports generated by the North Dakota Crime Lab.

Moore contends that the defendants "are lying to the court about no more DNA records existing."  <u>See</u> Docket No. 94, pp. 2-3.  To support his contention, Moore cites to the report on laboratory specimen number C04-1175 which provides a list of items that were collected as part of the evidence collection kit.  <u>See</u> Docket No. 94, p. 2 and Docket No. 50-32.  However, the items listed do not constitute separate reports or records.  Moore also contends that Olson has "falsified the DNA RECORDS BY falsely claiming that a match has occured (sic) although it has not."  <u>Id.</u> at 3.  Moore's bald assertions of deception and falsification are not sufficient to withstand a motion for summary judgment.  The Court finds that Moore's contentions regarding the DNA records under laboratory report number C04-1175 fail to raise a genuine issue of material fact.

Further, in response to Moore's recent requests, the North Dakota Crime Lab completed a Supplemental Lab Report on March 21, 2006, under laboratory number C0-4-1175.  <u>See</u> Docket No. 86-3.  The report of March 21, 2006, indicated that a computer search of the National DNA Index System would be performed.  The National DNA Index System found a match for the DNA sample taken from the victim's clothing, and provided that the name of the convicted offender associated with the DNA sample was Anthony Moore.  <u>See</u> Docket No. 86-4.  Hope Olson has submitted a genotype profile for laboratory specimen number C0-02-0039.  <u>See</u> Docket No. 86-6.  In the

affidavit accompanying the submittal of these documents, Olson attests that there are no other reports or test results responsive to Moore's requests.  <u>See</u> Docket No. 86, ¶ 10.

In summary, the Court finds that there is no credible evidence that any DNA records exist outside of those already provided to Moore.  The Court finds that Moore's claim fails as a matter of law.


D.      **DELIBERATE INDIFFERENCE TO MEDICAL CARE**

"The Eighth Amendment scrutinizes the conditions under which prison inmates are confined in order to prevent the inhumane treatment of inmates." <u>Robinson v. Hager</u>, 292 F.3d 560, 563 (8th Cir. 2002) (citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994)). The government is obligated "to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." <u>Id.</u> (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 103 (1976)). "For this reason, the Eighth Amendment proscribes deliberate indifference to the serious medical needs of prisoners." <u>Id.</u>; <u>see</u> <u>Camberos v. Branstad</u>, 73 F.3d 174, 175 (8th Cir. 1995) (requiring an inmate to demonstrate a deliberate indifference to his serious medical needs when alleging a deprivation of medical care). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that even a lay person would easily recognize the need for a doctor's attention." <u>Cambers v. Branstad</u>, 73 F.3d 174, 176 (8th Cir. 1995).  Deliberate indifference to such a need may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the

treatment once prescribed." Robinson v. Hager, 292 F.3d 560, 563-64 (quoting Estelle v. Gamble, 429 U.S. 97, 103 (1976)).

It is well-established that a prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. See Wilson v. Seiter, 501 U.S. 294, 298 (1991). The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the "minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 342 (1981). The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner. Estelle v. Gamble, 429 U.S. 97, 104 (1977). To establish deliberate indifference, the plaintiff must show the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety. Farmer v. Brennan, 511 U.S. 825, 835 (1994).

To prevail on an Eighth Amendment claim of deliberate indifference, an inmate must prove that (1) a substantial risk of serious harm to the inmate existed and (2) the prison official knew of and disregarded that risk. See Robinson v. Hager, 292 F.3d 560, 564 (8th Cir. 2002); Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997); Choate v. Lockhart, 7 F.3d 1370, 1373 (8th Cir. 1993). This entails a showing of something more than mere negligence or medical malpractice. Roberson v. Bradshaw, 198 F.3d 645 (8th Cir. 1999) (finding that neither negligence nor medical malpractice are sufficient to rise to an Eighth Amendment violation). A claim of deliberate indifference to an inmate's serious medical needs requires that the Plaintiff meet a higher burden of proof than is required in a simple negligence claim. In addition, an inmate's "mere disagreement with the course of his medical treatment" fails to state a claim of deliberate indifference. Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990); see also Dulany v. Carnahan, 132 F.3d 1234, 1239-44 (8th Cir. 1997).

30

The Count finds the claims regarding treatment for elevated amylase and small phleboliths in his pelvic area asserted by Moore fail as a matter of law. Moore has failed to establish the existence of an objectively serious medical need or that there existed a substantial risk of serious harm to him under the circumstances. Moore has also failed to present any evidence which reflects a subjective state of mind evincing deliberate indifference on the part of the Defendants. Therefore, Moore's claim of an Eighth Amendment violation fails as a matter of law.

The Eighth Circuit has consistently recognized that a serious medical need must be supported by medical evidence, such as a physician's diagnosis, or a condition that is obvious to a lay person. Roberson v. Bradshaw, 198 F.3d 645, 648 (8th Cir. 1999). The Eighth Circuit has also recognized that "[a] plaintiff's self-diagnosis alone cannot establish that he suffers from a serious medical need when the medical evidence does not support his self-diagnosis." Id. see also Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000) (standard of review; inmate must show more than even gross negligence, and mere disagreement with treatment decisions does not rise to level of constitutional violation); Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996) (prison officials do not violate Eighth Amendment when, in exercising professional judgment, they refuse to implement inmate's requested course of treatment).

The record clearly reveals that Moore has been subjected to a multitude of physical examinations and diagnostic tests. Moore has also been offered and has refused further lab testing, as well as an abdominal and pelvic CT scan to determine any medical problems or disorders. Moore contends that the "defendants have no evidence medically to the contrary that the plaintiff does not have elevated amylase and blood clots." See Docket No. 94, p. 5. Moore correctly points out that a test was performed that indicated elevated levels of amylase and the presence of small phleboliths

31

or small blood clots in his pelvis.  However, the record is clear that the presence of elevated levels of amylase and small phleboliths in Moore's pelvis area are insignificant and do not arise to the level of a serious medical need.  Moore has presented no credible evidence to establish that he suffers from a serious medical need.  The medical evidence simply does not support Moore's self-diagnosis.

However, even if Moore successfully established that his complaints regarding elevated amylase and small phleboliths in his pelvic area constitute a serious medical need, he has not provided the Court with any credible evidence to support the assertion that the Defendants were deliberately indifferent to his medical needs.  There is no evidence in the record before the Court to show that the Defendants ignored Moore's persistent complaints or concerns.  Rather, the evidence establishes that the Defendants promptly responded to the endless stream of complaints and appeals filed by Moore.  There is no evidence in the record to show that the Defendants were deliberately indifferent to Moore's medical needs, or that the Defendants were negligent or in any manner medically mishandled Moore's care.  The mere fact that an inmate disagrees with the course of treatment does not, in and of itself, suffice to establish a violation of the Eighth Amendment.

The United States Supreme Court has defined deliberate indifference as something more than negligence.  There is simply no evidence in the record before the Court to support a claim of negligence much less any evidence reflecting a deliberate indifference to Moore's medical needs. See Farmer v. Brennan, 511 U.S. 825, 835 (1994).  To the contrary, the record before the Court clearly shows that the Defendants were attentive and thorough in the care and treatment rendered. Thus, the Court finds there are no unresolved genuine issues of material fact surrounding Moore's

claims of falsified medical records and the Defendants are entitled to summary judgment on those issues as a matter of law.

### D.   DISCIPLINARY PROCEEDINGS

The Eighth Circuit has clearly set forth the Due Process rights of inmates when the inmate is deprived of privileges as punishment for past misconduct.

> These due process requirements . . . include (1) written notice of the charges, at least twenty-four hours before the hearing, in order to inform the inmate of the charges and to allow him to prepare a defense; (2) a written statement by the fact finders as to the evidence relied on and the reasons for the disciplinary action; (3) the right of the inmate to be present, to call witnesses, and to present documentary evidence, unless to do so would be unduly hazardous to institutional safety or correctional goals; and (4) in limited situations, a counsel substitute.

Brown-El v. Delo, 969 F.2d 644, 647 (8th Cir. 1992).  A decision to discipline an inmate must be supported by "some evidence."  Espinoza v. Peterson, 283 F.3d 949, 952 (8th Cir. 2002).  Further, the Eighth Circuit has elaborated on what is sufficient to meet the "some evidence" requirement.

> Thus, courts are to give deference to prison officials and should intercede in prison discipline cases only when the sanctions are wholly unsupported by the record.  Id. at 455-56, 105 S.Ct. 2768 ("Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, **the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board**.").

Gomez v. Graves,  323 F.3d 610, 612 (8th Cir. 2003) (citing Superintendent v. Hill, 472 U.S. 445, 455 (1985)) (emphasis added).

Moore alleges that his Due Process rights were violated when he was found guilty on three "Class A" incident reports.  See Docket No. 50, p. 4.  Moore contends that the Adjustment Committee had no evidence to support any of the findings of guilt.  Id.  The prison officials contend

33

that they had more than the "some evidence" standard required to support its decision.  Having previously found that Moore's claim regarding self-mutilation is barred by the doctrines of res judicata and collateral estoppel, the Court will analyze the remaining two claims.  The two remaining findings of guilt that Moore complains of are for 1) charges of unauthorized attendance, theft, and disorderly conduct; and 2) a charge of false testimony to staff.

### 1.   UNAUTHORIZED ATTENDANCE, THEFT, AND DISORDERLY CONDUCT INCIDENT

Moore contends that the Disciplinary Committee had "no evidence" to support its finding that Moore was guilty on the charges of unauthorized attendance, theft, and disorderly conduct.  See Docket No. 94, p. 5.  Moore contends that because the incident report does not contain the informants names, those statements are not legitimate and "could have easily been handwritten by the defendants."  Moore further contends that "there is no documentation of the confidential infoormants (sic) being relaible (sic) and creible (sic)."  Id.

The Eighth Circuit has upheld the non-disclosure of the identity of prison informants for the valid reasons of maintaining the safety of the informant and for prison security.  Espinoza v. Peterson, 283 F.3d 949, 952 (8th Cir. 2002).  In those cases, the Eighth Circuit requires that a determination be made as to the reliability of the confidential information.  Id.

The record reveals that the Disciplinary Committee stated that there was a need to maintain the confidentiality of the three sources "for their personal safety and security at this facility."  Id.  A review of the prison records reveals that the Disciplinary Committee disclosed its reliance upon three confidential sources and made a finding that those statements were reliable and credible

because the statements corroborated each other, and that the informants were actively looking for the book that Moore had returned.  See Docket No. 83-15, p. 4.  The informants describe the same book, the same date of the incident, and the fact that several of them were looking for the book at the time it was returned by Moore.  The Court has examined the statements provided by the confidential informants and finds that they are credible.

In light of such evidence, it is clear that Moore's disciplinary sanction was supported by "some evidence."  Accordingly, the Court finds that there are no genuine issues of material fact that would preclude the entry of summary judgment in favor of the prison officials in their individual capacities as to Moore's Due Process claim regarding his disciplinary sanction.


### 2.       FALSE TESTIMONY INCIDENT

Moore's only challenge to the Disciplinary Committee's decision is that it had "no evidence" to support its finding Moore guilty on the charge of false testimony to staff.  See Docket No. 94, pp. 4-5.  A review of the prison's administrative records regarding the charges and the grievance forms completed by Moore and Chris Sheldon reveals that the style and content of the grievance bearing Chris Sheldon's signature, including word phrases and typing format, is very similar to Moore's past grievances and dissimilar to Sheldon's style.  In light of such evidence, it is clear that Moore's disciplinary sanction was supported by "some evidence."  Accordingly, the Court finds that there are no genuine issues of material fact that would preclude the entry of summary judgment in favor of the prison officials in their individual capacities as to Moore's Due Process claim regarding his disciplinary sanction.

IV.     **CONCLUSION**

The Court has carefully and thoroughly reviewed the entire record.  There has been no competent, reliable evidence presented to support the claims of constitutional violations.  There are no genuine issues of material fact for trial and, as such, the Defendants are entitled to summary judgment as a matter of law.  The Defendant's amended Motion for Summary Judgment (Docket No. 80) is **GRANTED**.  The Plaintiff's Motion for Summary Judgment (Docket No. 60) is **DENIED**.  The Clerk of Court shall enter judgment accordingly.

**IT IS SO ORDERED.**

Dated this 21st day of August, 2007.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, Chief Judge
United States District Court

36